UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTOINE PERKINS,

    *Plaintiff*,

v.

ROBERT JOSLYN and
LAURA KINDER,

    *Defendants*.
                             /

CASE NO. 11-CV-10794

DISTRICT JUDGE AVERN COHN
MAGISTRATE JUDGE CHARLES E. BINDER

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANT KINDER'S MOTION FOR SUMMARY JUDGMENT**
(Doc. 13)
**AND DEFENDANT ROBERT JOSLYN'S MOTION FOR SUMMARY JUDGMENT**
(Doc. 19)

**I.**    **RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that the motions be **DENIED**.

**II.**    **REPORT**

    **A.**    **Introduction**

By order of U.S. District Judge Avern Cohn, this prisoner civil rights action was referred to the undersigned magistrate judge for general case management pursuant to 28 U.S.C. § 636(b). (Doc. 6.) Plaintiff Antoine Perkins, an inmate in the custody of the Michigan Department of Corrections ("MDOC"), is currently incarcerated at the Ojibway Correctional Facility in Marinesco, Michigan. Plaintiff's *pro se* complaint, brought under 42 U.S.C. § 1983, alleges that Plaintiff's Eighth Amendment right to not have his serious medical needs met with deliberate

indifference was violated in 2009 by two registered nurses while Plaintiff was incarcerated at the MDOC's G. Robert Cotton Correctional Facility ("JCF").

Before the Court is Defendant Laura Kinder's motion for summary judgment. (Doc. 13.) Plaintiff filed a response to the motion. (Doc. 17.) Defendant Robert Joslyn subsequently filed a motion stating that he joins in Defendant Kinder's motion for summary judgment because all of the arguments in Defendant Kinder's brief are "equally applicable" to Defendant Joslyn. (Doc. 19, Br. in Supp. at 2.) I conclude that, pursuant to E.D. Mich. LR 7.1(f)(1), the motions are ready for report and recommendation without oral argument.

### B.  Background

Plaintiff has chronic asthma and according to the medical evidence in the record, he receives "nebulized treatments and medications three times a day." (Grievance Response by R.N. Fran Hinsley, Doc. 1 at Ex. B.) Plaintiff alleges that on June 25, 2009, at approximately 7:00 a.m., he informed Defendant Nurse Laura Kinder that he "was having a[n] asthmatic attack and that [he] was wheezing, coughing, having chest pains and feeling lightheaded because [he] couldn't breathe." (Compl., Doc. 1, Stmt. of Facts ¶ 1.) Plaintiff alleges that Defendant Kinder responded that "there was nothing she could do about it because she was passing out med's and if [he] needed to be seen [he] needed to send a kite." (*Id*. ¶ 2.) Plaintiff states that he "informed her that [he] had not received any medication or had any breathing treatments since [he was placed] in segregation," and that he is supposed to get "breathing treatments three (3) times a day as ordered by Dr. Stevenson." (*Id*.) Plaintiff claims that Defendant Kinder said she would "check on it when she got back to health care" (*id*.), but that he was "left untreated and unexamined . . . ." (*Id*. ¶ 4.)

2

Plaintiff asserts that at around noon that day, Defendant Nurse Robert Joslyn was making rounds and Plaintiff informed him that he was "having an asthma attack . . ., couldn't breathe, . . . was wheezing, coughing and light headed." (*Id.* ¶ 5.) Plaintiff told Defendant Joslyn that he hadn't had any of his breathing treatments or meds since being moved to segregation, and also told him that Nurse Kinder had been informed earlier and said she would check on it, but had never returned. (*Id.*) Plaintiff claims that Defendant Joslyn responded that "he was only there to pass out meds, he knew nothing about what [Plaintiff] was talking about, and nobody said anything to him about it." (*Id.* ¶ 6.)

Later that day around 5:00 p.m., Plaintiff reported his symptoms to Nurse Brenda Upston, who administered oxygen and a nebulizer treatment, and then had Plaintiff transported by ambulance to the hospital, where he was admitted and remained for four days. (*Id.* ¶ 8.) Plaintiff attached to his complaint the hospital discharge instructions showing his diagnosis of "asthma exacerbation," a referral to a pulmonary consult, instructions that he be given "breathing treatments four times daily and as needed," and his prescription medications (Prednisone, Flunisolide, Xolair, Ocean, Advair, Sudafed, Proventil, Acetaminophen, and Duoneb). (*Id.* at Ex. G.)

Plaintiff claims that he endured great suffering as a direct result of the delay of medical treatment by both defendants in violation of the Eighth Amendment.

    **C.**    **Summary Judgment Standards**

A motion for summary judgment will be granted under Rule 56(c) where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587,

106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992).

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### D. Governing Law

The Supreme Court held in *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), that the deliberate indifference to serious medical needs of prisoners constitutes

unnecessary and wanton infliction of pain in violation of the Cruel and Unusual Punishments Clause of the Eighth Amendment to the Constitution. The Court explained that "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.* at 106.

A violation of the Eighth Amendment can be "manifested by prison doctors and their response to prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104. The inquiry is two-pronged, consisting of both an objective and a subjective element. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991). The objective inquiry asks whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 298.

### E. Analysis & Conclusion

#### 1. Objective Component of 8th Amendment Claim

Defendants assert that Plaintiff cannot satisfy the objective component of an Eighth Amendment claim because "he has failed to demonstrate that an injury or a serious medical need existed." (Doc. 13 at 3.) In Plaintiff's response, he states:

> Had Plaintiff not been treated when he was, who knows that the outcome could have been. Asthma is a life-threatening condition that if left un-treated or if treatment is delayed to [sic] long, death is imminent. Not only was plaintiff rushed to the hospital, plaintiff was admitted where he was treated with around the clock medication including an I-V. Plaintiff's asthma attack was sufficiently serious and satisfies the first prong of the objective component.

(Doc. 17, Br. at 5.) To support his assertions, Plaintiff attached to his response numerous pages of information about the seriousness of asthma from Mayo Clinic. (Doc. 17 at Ex. A.)

Defendants also contend, citing *Napier v. Madison County, Ky.,* 238 F.3d 739 (6th Cir. 2001), that Plaintiff "has failed to offer evidence to show that there was a delay in medical treatment by the defendant which rose to a constitutional violation" and that there "has been no showing that defendant[s] denied plaintiff the opportunity to seek medical attention, which resulted in unnecessary suffering or worsening of his condition." (*Id.* at 3-4.)

The Sixth Circuit has explained that when a delay in medical treatment is alleged, the cases fall into two classes for purposes of the objective component; a different standard of proof applies in each class. In *Napier*, the case cited by Defendants, the court held that "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Id.* at 742 (quotation marks and citation omitted). In *Blackmore v. Kalamazoo County*, 390 F.3d 890 (6th Cir. 2004), however, the court clarified that

> the "verifying medical evidence" requirement is relevant to those claims involving minor maladies or non-obvious complaints of a serious need for medical care. *Napier*, which was relied upon by the district court, falls within this branch of decisions. In a word, *Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. *Napier* applies where the plaintiff's "deliberate indifference" claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

6

*Id.* at 898. In *Blackmore*, the plaintiff's claim[1] did not require "verifying medical evidence" because it fell "under the 'obviousness' line of decisions." *Id.* at 899.

In the "obviousness" line of cases, a medical need is sufficiently serious if the "facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers." *Id.* at 898. The court clarified that "[t]his 'obviousness' standard for determining a serious medical need is distinct from a separate branch of Eighth Amendment decisions where the seriousness of a prisoner's medical needs 'may also be decided by the *effect* of delay in treatment.'" *Id.* (emphasis in original).

> As the Supreme Court has held, the test for deliberate indifference is whether there exists a "*substantial risk* of serious harm," *Farmer*, 511 U.S. at 837, 114 S. Ct. 1970 (emphasis added), and does not require actual harm to be suffered. *See also Smith v. Carpenter*, 316 F.3d 178, 189 n.15 (2d Cir. 2003) (observing that "actual physical injury is not necessary in order to demonstrate an Eighth Amendment violation" and declining to adopt a *per se* rule that such injury is required) (citing in part *Helling v. McKinney*, 509 U.S. 25, 35, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993)). Where the seriousness of a prisoner's needs for medical care is obvious even to a lay person, the constitutional violation may arise. This violation is not premised upon the "detrimental effect" of the delay, but rather that the delay alone in providing medical care creates a substantial risk of serious harm. When prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, their conduct in causing the delay creates the constitutional infirmity. In such cases, the effect of the delay goes to the extent of the injury, not the existence of a serious medical condition.

*Blackmore,* 390 F.3d at 899.

In this case, Plaintiff alleges in his verified complaint that he was "wheezing, coughing, having chest pains, . . . feeling light headed[,] [and] couldn't breathe" when he asked Defendant

---

[1] Blackmore alleged that he began to complain of stomach pain in the early morning hours on a Saturday, that he complained of sharp abdominal pain and vomiting on Sunday, but did not receive any medical attention until 6:00 a.m. on Monday morning, when he was transported to the hospital and an appendectomy was successfully performed without complication. *Blackmore*, 390 F.3d at 894.

Kinder for medical care on the morning of June 25, 2009, and when he asked Defendant Joslyn for help around noon that day. (Compl., Doc. 1, Stmt. of Facts ¶¶ 1,4.)

I suggest that wheezing, coughing, and difficulty breathing by a known asthmatic brings this claim under the *Blackmore* line of cases where the seriousness of a prisoner's need for medical care was obvious and created a substantial risk of serious harm, and therefore no verifying medical evidence is required. As stated in *Blackmore*, the "verifying medical evidence requirement" is only "relevant to those claims involving minor maladies or non-obvious complaints of a serious need for medical care." *Blackmore,* 390 F.3d at 898.

Moreover, I suggest that even if the "verifying medical evidence" requirement from *Napier* is applicable, Plaintiff satisfied the requirement. Plaintiff attached documentation to his complaint showing that later that day he was rushed to the emergency room by ambulance, diagnosed with "exacerbated asthma," and admitted to the hospital for four days. (*Id*. at Ex. G.) Viewing the facts and inferences in the light most favorable to Plaintiff, as the Court must, *Matsushita*, 475 U.S. at 587, these documents qualify as evidence verifying that a delay in medical care had a detrimental effect.

### 2.    Subjective Component of Eighth Amendment Claim

Defendants also assert that Plaintiff "has not provided sufficient evidence to satisfy the subjective element of a . . . deliberate indifference claim because he has not demonstrated a 'culpable state of mind,'" which is necessary for the claim to succeed. (Doc. 13, Br. at 4.) In support of this assertion, Defendant Kinder points to her affidavit wherein she states:

> On June 25, 2009, I conducted medical segregation rounds at JCF, I Unit, temporary segregation. During segregation rounds each patient is addressed individually to assure that they are without medical complaints, deliver medications and collect Health Care Request forms. While I do not recall a specific interaction

8

> with prisoner #249158 Perkins, I do know that at no time have I ever abandoned or ignored a complaint of difficulty breathing, wheezing, chest pain, light headedness or a request for a breathing treatment.

(Kinder Aff., Doc. 13, Ex. A ¶ 3.) Defendant Kinder attached to her affidavit a copy of the log book for that morning which merely shows entries at 7:02 a.m. and 7:32 a.m. stating, "Rds made." (*Id.*) Defendant Joslyn did not provide an affidavit or any documents in support of his position, and neither Defendant provided medical records showing that Plaintiff received any of his prescribed breathing treatments that day prior to 5:00 p.m.

Eighth Amendment liability exists if the defendant "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). On a motion for summary judgment, the moving party – here, the Defendants – have the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street* , 886 F.2d at 1479. I suggest that Defendants have failed to satisfy that burden. The record is clear that by 5:00 p.m. on June 29, 2009, Plaintiff's asthma was so severe as to require hospitalization. Plaintiff claims that his pleas for his breathing treatments earlier in the day were ignored by Defendants Kinder and Joslyn, and the only evidence Defendants have provided in support of their motion for summary judgment is Defendant Kinder's blanket statement that, although she has no memory of Plaintiff, she has never ignored a complaint of difficulty breathing and a log sheet showing that someone made rounds that morning. I suggest that this evidence fails to show the absence of a genuine issue of material fact and further is not "so one-sided" that Defendants "must prevail as a matter of law," *Booker,* 879 F.2d at 1310, but rather that the material facts are sufficiently in dispute to require submission to a jury.

9

### 3. Qualified Immunity

Defendant Kinder asserts that because Plaintiff has failed to provide sufficient evidence on either prong of an Eighth Amendment claim and because she has offered evidence that all of her actions were objectively reasonable, she is entitled to qualified immunity. (Doc. 13, Br. in Supp. at 6-7.) Defendant Joslyn apparently also asserts the defense of qualified immunity, as he states that the arguments in Defendant Kinder's brief "are equally applicable to defendant Joslyn's arguments." (Doc. 19, Br. in Supp. at 2.)

The defense of qualified immunity provides that government officials acting within their discretion are generally shielded from liability for civil damages as long as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). To determine whether a defendant is entitled to qualified immunity, a court considers: (1) whether the allegations rise to the level of a constitutional violation; and (2) whether the right allegedly violated was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). "For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what [she] is doing violates that right.'" *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (quoting *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992)).

I suggest that Defendants Kinder and Joslyn are not entitled to the defense of qualified immunity because, with regard to the first consideration, Plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate a disputed issue of material fact regarding whether Defendants' alleged failure to treat Plaintiff's asthma symptoms was objectively

unreasonable. With regard to the second consideration, courts have made clear that the right to adequate medical care has long been "clearly established." *See Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 552 (6th Cir. 2009).

### F.     Conclusion

I suggest that Defendants' motions for summary judgment be denied because Defendants failed to meet their initial burden of showing the absence of a genuine issue of material fact as to an essential element of Plaintiff's case. *Street* , 886 F.2d at 1479.

## III.    REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit*

*Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

                                                s/ *Charles E Binder*
                                                CHARLES E. BINDER
Dated: December 6, 2011                United States Magistrate Judge

## **CERTIFICATION**

     I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Thomas Leonard, and served by first class mail on Antoine Perkins, #249158, Ojibway Correctional Facility, N5705 Ojibway Rd., Marenisco, MI, 49947.

Date:  December 6, 2011              By     s/*Jean L. Broucek*
                                                      Case Manager to Magistrate Judge Binder